IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**PAUL ARNOLD**,

        Plaintiff,

v.

        No.6:07-CV-00170-BB

**JEFFREY P. JOHNSON, M.D.**,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment (Doc. 88). The Court, having considered the motion, response, reply, and relevant law, and being otherwise fully informed, finds that the motion will be granted.

**I. Background**

Plaintiff Paul Arnold brought the underlying suit as a result of pain and numbness he experienced following spinal surgery performed by Defendant Dr. Johnson. At the core of Mr. Arnold's cause of action is his contention that Dr. Johnson negligently misplaced a pedicle screw in his spine during surgery, and that this misplaced screw caused his injuries. Due to dilatoriness[1]

---

[1] Plaintiff's counsel missed the initial deadline for expert disclosures of October 19, 2007. As a result, Defendant filed a motion for summary judgment for lack of an expert witness on October 25, 2007. In response, on November 8, 2007, Plaintiff's counsel filed an opposed motion to extend the deadline for the expert disclosures. As the lack of an expert can be fatal to medical malpractice actions, and the Court found denying Plaintiff's motion to extend would constructively dismiss the case, the Court granted Plaintiff 15 additional days to make the required expert disclosures. *See* Memorandum Opinion and Order of February 12, 2008, Doc. 50. While Plaintiff filed a Rule 26 disclosure for a single witness, Dr. Jeffrey Garges, within the allotted time, the filed report contained only a very cursory summary of the opinions that Dr. Garges intended to offer, and attempted to reserve the right to allow Dr. Garges to amend and supplement his opinions at a later date. In response to the cursory and unfinished nature of the report, Defendant filed a motion to strike Plaintiff's expert. The Court did not strike Plaintiff's expert, but limited Plaintiff's expert's testimony to the opinions expressed in his initial expert

on the part of Plaintiff's counsel, the Court limited Plaintiff's expert Dr. Jeffrey Garges to expressing only those opinions stated in his February 27, 2008 disclosure. [Order Denying Defendant's Motion to Strike Plaintiff's Expert, Dr. Jeffrey Garges, Doc. 87]. The Court also allowed Plaintiff an extension of time to depose Plaintiff's treating physician, Dr. Youssef, and submit any facts or opinions he may advance. None have been forthcoming. Defendant now contends that, given the limitations on Plaintiff's expert testimony, Plaintiff will be unable to establish proximate cause at trial, and thus summary judgment is warranted.

## II. Applicable Law

This is not an ordinary summary-judgment case, in which the Court would merely look to see whether conflicting evidence exists as to the elements of Plaintiff's case. Instead, this case implicates New Mexico law specific to medical malpractice cases. The parties agree that in most such cases, expert testimony is required to establish elements of the cause of action such as breach of the standard of care and proximate cause. *See, e.g., Schmidt v. St. Joseph's Hosp.*, 736 P.2d 135,138 (N.M. App. 1987). In a rare case, however, the available evidence may be such that a layperson's common knowledge would be sufficient to allow a determination as to an issue such as proximate cause, even in the absence of expert testimony. *See Eis v. Chesnut*, 627 P.2d 1244, 1246 (N.M. App. 1981) (combination of medical records and circumstances, such as patient's pain immediately following surgery, was sufficient to allow finding of negligent failure to diagnose even though patient did not have expert testimony supporting that finding).

Plaintiff contends this is an example of the rare case in which expert testimony is not necessary, given the evidence that has already been produced in the case. In analyzing that question, the Court recognizes that in New Mexico, proximate cause in medical-malpractice cases must be proved to a reasonable medical probability. *See Alberts v. Schultz*, 975 P.2d 1279,

---

report.

1286 (N.M. 1999). The question for the Court, therefore, is whether, viewing the available evidence in the light most favorable to Plaintiff, the common knowledge of a layperson would be sufficient to allow a reasonable inference, to a reasonable medical probability, concerning the existence of proximate cause. More specifically, the Court must determine whether a layperson could find to a medical probability that Defendant's alleged misplacement of a pedicle screw during Plaintiff's back surgery was a cause of the symptoms Plaintiff suffered following the surgery.

### III. Discussion

The first step in the analysis requires the Court to lay out all evidence that has been presented to the Court that might be relevant to the issue of proximate cause. This evidence has been derived from several sources, including Plaintiff himself; Dr. Garges, Plaintiff's expert; two neurosurgeons Plaintiff consulted in an effort to determine the cause of his symptoms; and the medical records of Dr. Youssef, who performed a second surgery on Plaintiff's back and relieved at least some of Plaintiff's symptoms.

Plaintiff's own evidence consists of the following deposition testimony: (1) shortly after the surgery performed by Defendant, Plaintiff developed symptoms in his left leg, including burning pain, numbness, and a condition called a "foot drop" [Doc. 26, Exh. 1, *passim*]; (2) Plaintiff went back to Defendant's office and saw Defendant once, and then Defendant's physician's assistant ("PA") [*id.*]; (3) at some point the PA referred Plaintiff for an MRI test, then looked at the MRI and told Plaintiff there was nothing wrong [Doc. 35, Exh. A, pp. 34-40]; (4) Plaintiff, however, could plainly see on the MRI that one of the screws placed in his spine was crooked, while the other three were straight [*id.*]; (5) Plaintiff continued to have symptoms and consulted Dr. Berger and Dr. Freedman, both neurologists [Doc. 26, Exh. 1, *passim*]; (6) Plaintiff finally consulted Dr. Youssef in Durango, Colorado, who ordered a CT scan and then

recommended a second surgery [Doc. 35, Exh. A, p. 134]; and (7) following the surgery, Plaintiff's symptoms were relieved to a certain extent although he is not completely pain-free.[2]

As pointed out above, the evidence obtained from Dr. Garges is limited to that contained in his initial expert report. In that report, he did not state that a misplaced screw was the cause of Plaintiff's post-surgery symptoms. Instead, he confined his expert opinion to statements indicating that "postoperative neurological change warrants investigation with adequate imaging" and the "failure to timely identify the misplacement of the pedicle screws was a breach of the standard of care." [Doc. 54, Exh. 1] Significantly, Dr. Garges did not state that he viewed the MRI, CT scan, or x-rays that were taken of Plaintiff's back at various points following the first surgery. Perhaps for this reason, he offered no opinion as to whether a misplaced screw was the cause of Plaintiff's symptoms. Therefore, his expert report offers little toward resolving the question of proximate cause.

The evidence available concerning the neurologists, Dr. Berger and Dr. Freedman, is similarly unhelpful with respect to the proximate-cause issue. There is no evidence that either neurologist ever looked at the MRI depicting the placement of pedicle screws in Plaintiff's spine. According to Plaintiff, Dr. Berger performed certain nerve-conductivity tests, but Plaintiff does not recall bringing his MRI films to Dr. Berger. [Doc. 35, Exh. A, pp. 44, 59] Dr. Freedman, on the other hand, simply examined Plaintiff, spoke to him, and did not recommend any further imaging or electrodiagnostic studies. [Doc. 26, Exh. 2] Neither neurologist offered any opinion as to any relationship, or lack thereof, between the alleged misplacement of a pedicle screw and Plaintiff's symptoms.

---

[2]Plaintiff states this fact in his response brief, albeit without any citation to the record. Since it comes from Plaintiff's own attorney, the Court accepts it as reflecting evidence that has been produced during discovery.

The only evidence available from Dr. Youssef is his pre-and-post-surgery medical records.[3]  Relevant information in those records includes the following statements:  (1) prior to the surgery, Dr. Youssef viewed a CT scan performed on December 3, 2004, and believed it "showed left L4 pedicle screw attending across the left lateral recess" [Doc. 91, Exh. B]; (2) Dr. Youssef stated the problem as "retained painful hardware" and proposed surgery removing this instrumentation and "exploring the fusion mass" [*id.*]; (3) following the surgery Dr. Youssef wrote notes indicating the preoperative and postoperative diagnosis was the same – "retained painful hardware L4-L5 status post lumbar fusion L4-L5 with medially placed screw at L4 on the left violating the medial canal" [*id.*]; (4) in those same notes Dr. Youssef summarized his operative findings as a "medially placed L4 screw with violation of the medial border of the pedicle into the canal and thinning of the dura along the L4 nerve root" [*id.*]; (5) Dr. Youssef also described the surgery, indicating the hardware was removed and, significantly, "scar tissue was meticulously removed from between the L4-L5 pedicle screw along the medial margin of the facet joint" and a "remnant of the LEFT L4-L5 facet joint was removed...and a small foraminotomy was performed" [*id.*]; (6) almost a month after the surgery, Dr. Youssef described a follow-up visit, stating that the surgery involved removal of retained painful hardware, a medially placed screw at L-4 on the left violating the medial canal; that Plaintiff's leg pain "has completely resolved" and Plaintiff has had "some improved strength in his left lower extremity"; and that Dr. Youssef's impression was "two weeks status post removal of retained painful hardware at L4-L5 with resolution of his radicular features."  [*id.*].

---

[3]As noted above, at the last hearing held by the Court in this case Plaintiff was given an opportunity to depose Dr. Youssef before the Court ruled on this motion.  Despite comments from the Court indicating Dr. Youssef's testimony might be relevant to the proximate-cause issue, Plaintiff has not seen fit to submit any excerpts from that deposition for the Court's review.  The Court will not speculate as to the reason for this failure.

From the above evidence, a layperson's common knowledge would allow a number of reasonable inferences. First, Plaintiff developed new symptoms in his left leg shortly after Defendant performed the surgery fusing the L4 and L5 disks in his back. Second, an MRI appeared to show that one of the pedicle screws was at a different angle than the others. Third, the CT scan apparently ordered by Dr. Youssef indicated the screw "attending" across the "left lateral recess".[4] Fourth, during surgery Dr. Youssef discovered that the L4 screw was "medially placed" with "violation of the medial border of the pedicle into the canal and thinning of the dura along the L4 nerve root".[5] Fifth, Dr. Youssef did not simply remove the pedicle screw during the surgery; he also removed scar tissue and a "facet joint" and performed a "foraminotomy."[6] Finally, as a result of the surgery, some of Plaintiff's symptoms were relieved.

The reasonable inferences available to a layperson of common knowledge are not enough to allow a finding of proximate cause to a reasonable medical probability. Without an explanation of the medical terminology, it is not possible for a layperson to know the significance of the pedicle screw's violation of the medial canal, or the fact that it was medially placed. Furthermore, it is impossible for a layperson to determine whether the relief of Plaintiff's symptoms was achieved by removal of the screw, or removal of the scar tissue, or removal of the facet joint, or the foraminotomy procedure. It is not sufficient that Dr. Youssef diagnosed Plaintiff's problem as retained painful hardware; more explanation of the underlying physiology would be needed for a layperson to be able to infer that the hardware, rather than the scar tissue

---

[4] A layperson would not, however, have any idea what "attending" means in medical terminology, or what the "left lateral recess" is.

[5] Again, most of this terminology would be incomprehensible to a layperson; the most a non-medically-educated person could gather would be that the pedicle screw violated the border of something and intruded into a canal of some type.

[6] While a layperson would know what it means to remove a screw, a layperson would most likely have no idea what a "facet joint" or a "foraminotomy" is.

or facet joint, was the cause of Plaintiff's symptoms. A layperson, then, would essentially have to guess which of the procedures actually alleviated Plaintiff's symptoms. For that reason, this is not one of the rare cases in which expert testimony is not needed to prove the element of proximate cause in a medical malpractice case.

**IV. Conclusion**

Based on the foregoing, Defendant's motion for summary judgment on the issue of proximate cause will be granted. As a result, Plaintiff's claim for medical malpractice will be dismissed. As the parties discussed at the last hearing held in this matter, Plaintiff's claims for lack of informed consent and for negligent infliction of emotional distress have not been the subject of a dispositive motion and remain extant.[7]

**ORDER**

A Memorandum Opinion having been filed this date, it is hereby ORDERED that Defendant's motion for summary judgment (Doc. 88) be, and hereby is, GRANTED.

Dated this 25th day of November, 2008.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

---

[7] The Court recognizes that a motion in limine has been filed that could impact one or both of these claims. That motion will be decided prior to trial.