**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

**PAUL ARNOLD**,

                Plaintiff,

v.

                                          No.6:07-CV-00170-BB

**JEFFREY P. JOHNSON, M.D.,**

                Defendant.


**<u>MEMORANDUM OPINION AND ORDER</u>**

       **THIS MATTER** is before the Court for consideration of motions to reconsider filed by both parties (Docs. 134, 135).  The Court has considered the submissions of the parties and the applicable law, and rules as discussed below.

       **Plaintiff's Motion for Reconsideration**

       In August 2008, this Court allowed Plaintiff an opportunity to depose Dr. Youssef, noting that his testimony could be relevant to the issue of proximate cause in this case.  That deposition was taken in September.  On September 25, 2008, Defendant filed a notice indicating that his previously-filed motion for summary judgment, arguing that Plaintiff had failed to establish the element of proximate cause, was ready to be decided.  Plaintiff filed no response to this notice and filed nothing at all concerning the testimony Dr. Youssef had given at his deposition.  Accordingly, on November 25, 2008, this Court granted Defendant's motion for summary judgment as to Plaintiff's medical-malpractice claim, on the basis that Plaintiff had not adduced sufficient evidence to meet his burden of establishing proximate cause.  In that opinion the Court specifically noted Plaintiff's failure to submit any information to the Court concerning Dr. Youssef's testimony at his deposition.  Approximately one month later, Plaintiff filed a motion for reconsideration.  This motion was based on the testimony Dr. Youssef gave at his deposition.

Plaintiff for the first time provided this Court with excerpts of the deposition transcripts, which according to Plaintiff contain sufficient evidence to meet his burden of raising a genuine issue of material fact with respect to the causation issue.

Defendant raises a number of arguments in opposition to the motion for reconsideration. First, Defendant argues that the motion for reconsideration should be treated as a motion to alter or amend a judgment under Rule 59 of the Federal Rules of Civil Procedure.  According to Defendant, the deposition transcripts attached to Plaintiff's motion are not newly discovered evidence and are not evidence Plaintiff was unable to discover prior to the Court's order granting partial summary judgment.  Therefore, argues Defendant, the requirements of Rule 59 have not been met and the motion for reconsideration should be denied on that basis.  The problem with Defendant's argument is that his premise, that the motion should be treated as a Rule 59 motion, is incorrect.  The order granting summary judgment as to one of Plaintiff's claims was not a final order and did not end the litigation.  Therefore, it was an interlocutory order, and interlocutory orders are subject to reconsideration at any time prior to final judgment, in the district court's discretion.  *See, e.g., In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) (district courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment; order vacating the summary judgment was simply an exercise of that inherent power).  For this reason the requirements of Rule 59 do not apply to Plaintiff's motion for reconsideration.  *See Fye v. Oklahoma Corp. Comm'n,* 516 F.3d 1217, 1224 n.2 (10th Cir. 2008)(district court's partial summary judgment ruling was not a final judgment; motion for reconsideration therefore implicated district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment, and district court was not "bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b)").

2

Defendant also argues that, even if the Court does not accept the timeliness argument, Dr. Youssef's deposition testimony should not be considered because he was not disclosed as an expert witness.  As Plaintiff points out, however, Dr. Youssef is a treating physician and as such, he did not have to be disclosed as an expert as long as his testimony is limited to opinions he formed during his treatment of Plaintiff.  *See Farris v. Intel Corp.*, 493 F.Supp.2d 1174, 1180 (D.N.M. 2007).  If, however, Dr. Youssef's opinions are based on information not learned in the course of treating Plaintiff, those opinions will not be admissible since he was not disclosed as an expert.  *See id.; see also Ngo v. Standard Tools & Equip. Co., Inc.*, 197 F.R.D. 263, 266-67 (D.Md. 2000) (treating physician may testify as to "fact opinions," which are opinions based on information learned during the treatment of the patient; if the opinions are based on information not learned during treatment, those opinions are "expert opinions" that are subject to the disclosure rules applicable to experts).[1]  A review of Dr. Youssef's deposition excerpts and medical records indicates that all of his opinions concerning the causes of Plaintiff's condition are based on information Dr. Youssef obtained during the course of his treatment of Plaintiff. Dr. Youssef consulted with Plaintiff, ordered images of Plaintiff's spine, performed surgery, and then observed the results of the surgery.  All opinions he gave during his deposition are based on the information he obtained from those sources, and his opinions therefore are fact opinions that are not subject to the disclosure requirements Defendant claims were violated.

Defendant argues in addition that, even if Dr. Youssef's deposition testimony is considered, it is insufficient to raise a genuine issue of material fact as to the causation issue, to a

---

[1]Defendant argues that *Farris* is distinguishable from this case, and that the factors identified in *Farris* in support of allowing the treating physician to testify are not present here. However, Defendant's argument is based on the portion of *Farris* that discusses the treating physician's expert testimony rather than his fact-based testimony.  In other words, in *Farris* the plaintiff wished to use his treating physician both as an expert and as a fact witness, and the factors discussed in *Farris* apply only to the former testimony rather than the latter.  493 F.Supp.2d at 1178-79.  Defendant's argument is therefore not persuasive.

reasonable medical probability.  *See Alberts v. Schultz*, 975 P.2d 1279, 1286 (N.M.

1999)(causation must be proved to a reasonable medical probability in medical malpractice cases

in New Mexico).  The Court must disagree.  When asked whether, to a reasonable degree of

medical probability, the placement of the screw proximately caused Plaintiff to experience some

of the symptoms about which he was complaining, Dr. Youssef replied that "the screw violation

can contribute to postoperative radiculopathy and neurologic deficit."  [Doc. 135, Exh. 1, p. 8]

Later he testified that, even though Plaintiff had experienced no improvement in symptoms for

years following the initial surgery, removing the screw and performing a foraminotomy did

provide him with relief.  [*Id.* p. 14]  Dr. Youssef was then asked whether, to a reasonable degree

of medical probability, Plaintiff would have continued to experience his pain and other

symptoms if Plaintiff had not undergone the surgery, and he replied that while he did not have a

crystal ball, his symptoms were ongoing and not changing prior to the surgery.  [*Id.* pp. 14-15]

Still later, Dr. Youssef was asked if, to a reasonable degree of medical probability, the

malpositioned screw could have caused some of the symptoms Plaintiff was experiencing, and

Dr. Youssef replied, "It's possible that it could have caused his symptoms."  [*Id.* p. 26]  Dr.

Youssef was then asked whether the surgical intervention was reasonable and necessary, and he

agreed that it was.  [*Id.* p. 27][2]  Finally, in response to a completely leading question, Dr.

Youssef agreed that to a reasonable degree of medical probability the malpositioned screw was

at least one of the contributing factors or reasons Plaintiff experienced postoperative

neurological deficits.  [*Id.*]  These answers, especially when considered in the aggregate, are

sufficient to allow a fact-finder to determine, to a reasonable medical probability, that the

---

[2]Defendant discounts this statement by arguing that Dr. Youssef added a possible qualification, to the effect that he offered the surgery to Plaintiff and Plaintiff wanted to pursue it.  Especially since the testimony must be viewed in the light most favorable to Plaintiff, however, the Court cannot ignore Dr. Youssef's initial, unequivocal "yes" answer to the question.

allegedly malpositioned screw was a proximate cause of at least some of Plaintiff's symptoms following his original surgery. This is true even if the Court disregards Dr. Youssef's affirmative answer to the leading question noted above, although it is not necessarily the case that such an answer need be excluded from consideration at the summary-judgment stage. *See, e.g., United States v. Olivo*, 69 F.3d 1057, 1065 (10th Cir.1995) (Rule 611(c), governing leading questions, vests broad discretion in the trial judge regarding exclusion of answers to such questions).

Defendant's final argument is that, even if Dr. Youssef's testimony is sufficient to show that the allegedly misplaced pedicle screw caused some injury to Plaintiff, there is no evidence Defendant was negligent in any way. This is an argument Defendant has not raised before, as his motion for summary judgment was directed solely at the proximate-cause question. However, it is easily answered. Plaintiff's expert, Dr. Garges, stated in his report that Defendant's failure to diagnose the misplacement of the pedicle screw following the original surgery was a breach of the standard of care. [Doc. 58, Exh. 1, p. 3] As noted above, Dr. Youssef's testimony is sufficient to allow a finding that the misplaced screw caused at least some of the symptoms suffered by Plaintiff during the lengthy time period between the surgery performed by Defendant and the one performed by Dr. Youssef. Thus, contrary to Defendant's argument, there is evidence of a negligent act (the failure to diagnose the misplacement of the screw in a timely manner), causation, and resulting harm to Plaintiff.

The above discussion establishes that the Court has discretion to grant Plaintiff's motion for reconsideration, and that doing so would mean the partial summary judgment previously granted to Defendant should be set aside. The fact that the Court has the authority to take such action, however, does not mean it is required to do so. Plaintiff is asking the Court to consider evidence concerning a motion for summary judgment that was filed many months ago, and which the Court has already decided. Plaintiff's excuse for his extremely late submission of the

evidence is that Defendant's original motion did not mention Dr. Youssef, but focused on Plaintiff's expert witness instead. This argument is not at all persuasive. Defendant's motion for summary judgment contended that, with the expert witness testimony limited to the somewhat cursory expert report, Plaintiff could point to no evidence establishing the element of proximate cause. In response, it was incumbent on Plaintiff to submit any evidence he might have bearing on the causation issue, including any evidence obtained from Dr. Youssef. It was not Defendant's responsibility to point out and attack all possible sources of evidence that might be contrary to Defendant's position, although that appears to be the crux of Plaintiff's argument.

In deciding the correct resolution of this matter, it is useful to consider the factors that are applied in similar situations, including cases in which defendants wish to avoid a default judgment by filing a late answer, those in which parties attempt to reopen judgments under Rule 60(b), and those in which parties request permission to file belated motions or other pleadings. In all of these situations, courts consider whether there was neglect by counsel, and if so whether that neglect is excusable. *See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005); *Griffin v. Suthers*, 156 Fed.Appx. 66 (10th Cir. 2005, unpublished). Courts also consider other factors such as the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, and the existence of a meritorious defense or cause of action. *See Pioneer*; *Jennings*, 394 F.3d at 856-57. It is clear in this case that Plaintiff's failure to submit Dr. Youssef's deposition testimony in a timely fashion was due to neglect on the part of his attorney. His attorney should have realized the testimony was highly relevant to the proximate-cause question, and there was no defensible reason for failing to submit that testimony for the Court's consideration.

The Court notes that during the two-month period prior to the entry of the partial summary judgment, there appears to have been a dispute between Plaintiff's original counsel, Mr. Sandoval,

and the law firm employing Mr. Sandoval.[3]  This apparent dispute, and the resulting change-over of representation, is a likely reason for the carelessness exhibited by either Plaintiff's former counsel or his current counsel, or both, in addressing the summary-judgment motion and Dr. Youssef's deposition testimony.  Of course, Plaintiff may properly be charged with the negligence of his counsel, so the mere fact that his case may have been caught up in a dispute between his attorneys does not require the Court to grant his motion for reconsideration.  *See Pioneer*, 507 U.S. at 396-97 (noting that clients must be held accountable for acts and omissions of their attorneys).  The circumstances do indicate, however, that counsel's neglect was a result of carelessness rather than a deliberate attempt to manipulate the Court or opposing counsel.  The Supreme Court has noted that the concept of "excusable neglect" includes acts of carelessness not involving bad faith.  *See id.* at 388.

    As for the other relevant factors, it is apparent that, as discussed above, Dr. Youssef's testimony, if considered, would lead to denial of the motion for summary judgment and a trial on the merits of Plaintiff's main cause of action.  This is a factor militating in favor of granting the motion for reconsideration.  *See Jennings, supra*, 394 F.3d at 857 (one consideration under Rule 60(b) is whether moving party's underlying claim is meritorious).  Furthermore, the mere fact that Defendant may now have to defend against a potentially meritorious cause of action is not the type of prejudice contemplated by the courts in situations such as this one.  On the other hand, Defendant has clearly suffered some degree of prejudice.  For one thing, Defendant has had to research and file an answer to the motion for reconsideration, which would not have been necessary had Plaintiff

---

    [3]The Court infers this from Mr. Sandoval's motion requesting permission to withdraw as Plaintiff's counsel.  In that motion Mr. Sandoval states that he no longer has a working relationship with his former law firm and cannot gain access to Plaintiff's file.  The Court also notes that Mr. Sandoval filed a pleading on behalf of Plaintiff on October 20, 2008, while Plaintiff's current counsel, Mr. Branch, filed the next pleading on Plaintiff's behalf on October 24, 2008.  [Docs. 126, 129]

7

simply submitted the Dr. Youssef evidence in a timely manner.  In addition, with a trial date fast approaching, Defendant will now have to prepare a defense for a cause of action that had apparently been dismissed and was no longer a factor in the case.  Whether the motion for reconsideration is granted or not, Defendant will certainly not be forced to suffer for the dilatory conduct of Plaintiff's counsel.  *See, e.g., Jennings*, 394 F.3d at 857 (monetary sanctions could be assessed against negligent attorney to compensate opposing party for expenses that would be incurred if case were reopened).

Considering all the circumstances, and particularly the strong prejudice in favor of deciding potentially meritorious claims on the merits rather than pursuant to procedural default, the Court will grant Plaintiff's motion for reconsideration if certain conditions are met.  Those conditions are as follows:  (1) Plaintiff's counsel, not Plaintiff, will be required to pay all reasonable costs and attorney's fees incurred by Defendant as a result of Plaintiff's failure to timely submit the deposition testimony of Dr. Youssef;[4] and (2) if Defendant so wishes, the trial of this matter will be continued to afford Defendant more time to prepare his defense to the claim that will be revived if Plaintiff decides to comply with the first condition.

**Defendant's Motion for Reconsideration**

Defendant has filed a motion for reconsideration asking the Court to dismiss the two remaining claims raised in Plaintiff's complaint, one for lack of informed consent and one for negligent infliction of emotional distress.  Plaintiff contends the motion cannot be a motion for "reconsideration" because the Court has never addressed these claims, or been asked to address them, and therefore there is nothing to reconsider.  Plaintiff adds that the motion is in reality a potentially dispositive motion filed after the deadline established for such motions in this case.  The Court agrees that the motion is not properly considered a motion for reconsideration.  Defendant's

---

[4]Defendant will be allowed to submit a pleading detailing those costs and expenses, and Plaintiff will then have an opportunity to object to that submission.

motion for summary judgment did not mention informed consent or negligent infliction of emotional distress at all; instead, it was directed only at the alleged misplacement of the pedicle screw and the lack of evidence that such misplacement caused any of Plaintiff's alleged damages.  [Doc. 88]  In addition, at the August hearing held in this case the Court specifically questioned counsel concerning these two causes of action, and counsel informed the Court the claims would have to be tried.  Therefore, as Plaintiff argues, there is no ruling for the Court to reconsider at this point.

Despite the lack of any ruling for the Court to reconsider, however, the Court will entertain the arguments Defendant has raised.  It would hardly be fair for the Court to reconsider a prior order on the strength of a late submission of evidence from Plaintiff, only to then refuse to consider a late submission from Defendant.

Defendant's argument with respect to the informed-consent cause of action is that, without any evidence establishing causation, this claim must be dismissed.  This argument is answered by the preceding section of this opinion.  The Court has agreed to consider the contents of Dr. Youssef's deposition, and has held that these contents are sufficient to establish causation under the applicable standard.  For that reason, Defendant's argument fails.

Defendant's argument concerning the negligent-infliction-of-emotional-distress ("NIED") claim, however, is well taken.  Defendant contends such claims are viable in New Mexico, as stand-alone tort claims, only for bystanders who suffer severe distress after witnessing injuries suffered by close relatives.  Plaintiff rejects this argument, pointing to *Madrid v. Lincoln County Medical Center*, 923 P.2d 1154 (N.M. 1996).  Since *Madrid* was decided, however, the New Mexico Court of Appeals has reiterated that in New Mexico, recovery for NIED "is limited to situations in which 'a bystander ...suffers severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member.'"  *Castillo v. City of Las Vegas*, 195 P.3d 870, 876 (N.M. App. 2008).  The *Castillo* opinion characterizes *Madrid* as the sole exception to this rule, creating a cause of action pursuant to public policy where a plaintiff fears that the negligence of

another person has caused him or her to contract HIV.  *Id.* [5]  The Court therefore finds that Plaintiff cannot maintain a separate, stand-alone cause of action for NIED in this case.  Instead, Plaintiff is limited to possibly recovering emotional damages that may have been caused by the other torts Defendant is alleged to have committed.

### Conclusion

Based on the foregoing, the Court will rule as follows.  First, Plaintiff's motion for reconsideration is conditionally granted, provided that Plaintiff's counsel pays the reasonable costs and attorney's fees incurred by Defendant as a result of counsel's failure to timely submit the excerpts from Dr. Youssef's deposition. [6]  Second, should Defendant require a continuance of the trial date to properly prepare for the revived cause of action, upon request of Defendant such a continuance shall be granted.  Finally, Defendant's motion for reconsideration will be granted to the extent it addresses Plaintiff's stand-alone claim for NIED, and that claim will be dismissed.

### ORDER

A Memorandum Opinion having been filed this date, it is hereby ORDERED that Plaintiff's motion for reconsideration (Doc. 135) be, and hereby is, conditionally GRANTED, under the terms

---

[5]After reviewing *Madrid*, the Court is not certain the New Mexico Supreme Court intended  to create a separate cause of action in such circumstances.  *Madrid* seems to be discussing the availability of emotional-distress damages, rather than a stand-alone cause of action in tort, although it does use terminology referring to a "claim" for such damages.  *See* 923 P.2d at 1162 (noting that a prior case from that court should not have been read to mean that a cause of action for NIED exists in New Mexico "outside of the bystander context...").  In any event, the Court agrees that at most, *Madrid* creates a limited exception to the general rule stated in *Castillo*.

[6]The Court expresses no opinion as to whether the fault for that failure should be attributed to Plaintiff's former counsel or his current counsel.  Current counsel, who filed the motion for reconsideration and is now the only representative for Plaintiff before this Court, shall be liable for the payment required by this opinion.

stated in the opinion.  It is also ORDERED that Defendant's motion for reconsideration be, and

hereby is, GRANTED in part and DENIED in part.

Dated this 6th day of February, 2009.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE